THE NEW YORK CENTRAL NO. 2.

(District Court, S. D. New York. July 7, 1904.)

1. COLLISION—STARBOARD RULE—VIOLATION.

> Where a steam tug and a steam canal boat approached each other, and the canal boat showed her red light to the tug, which showed her green light to the canal boat, but the tug did nothing to avoid collision, expecting that the canal boat would starboard and pass between the tug and another tug coming down the river, and a collision was caused apparently by the two tugs starboarding their helms and working about 500 feet off in the river, which was not justified by any signals, the canal boat having signaled that she intended to cross the bows of the tugs, as it was her duty to do, it being the duty of the tug to give way in compliance with the starboard-hand rule, the tug was liable for the collision.

In Admiralty.

James J. Macklin, for libellant.

Butler, Notman, Joline & Mynderse (Frederick M. Brown, advocate), for claimant.

ADAMS, District Judge. This action was brought by Oliver L. Jones, the owner of the steam canal boat Silex, and Jeremiah Lynch, a fireman and the owner of some personal effects on board, to recover their respective losses, caused by a collision between the canal boat and the tug New York Central No. 2, a little after 7 o'clock P. M. on the 3rd of January, 1903, in the East River, near the Battery. The Silex was bound from Shady Side, New Jersey, to 109th Street, East River. The No. 2, with a loaded car float in tow on the starboard side, was proceeding from pier 34, East River to 68th Street, North River. Both vessels were going ahead when the collision happened, by the No. 2's float striking the Silex a severe blow on her port side near the stern, with the effect of causing her such injuries that she was obliged to seek the shore of Governors Island to avoid sinking. The tide was flood.

When first seen by each other, the Silex was heading towards Brooklyn and showing her red light to No. 2. The latter was showing her green light to the Silex. Under these circumstances, it was the duty of the latter to maintain her course and speed till it became evident that a collision was imminent, and for the No. 2 to avoid her. The Silex followed the rule. The No. 2, however, did nothing towards avoiding the Silex, but kept on in the expectation that the latter would starboard and pass between the No. 2 and another tug, the New Haven No. 4, and float coming down the river somewhat more slowly, a short distance on the starboard side of the No. 2, on a course similar to the No. 2's. It was the Silex's duty, however, to keep her course.

It is claimed by the No. 2 that the Silex was showing her green light to the former and that it was the duty of the Silex to pass No. 2 starboard to starboard. The testimony does not sustain the contention.

The cause of the collision apparently was that the two tugs, when getting somewhat above pier 4, starboarded their helms, and worked about 500 feet off in the river. This was not justified by any signals, the Silex all the time advising the tugs by signals of one blast each, of which she gave several, that she intended to cross their bows, as it was

her duty to do. Nevertheless the No. 2 kept on at full speed, till almost in the jaws of the collision, in her effort to cross the bow of the Silex and to force the latter to starboard and go between the tugs. For this obvious fault, I must hold No. 2 liable, as being the responsible cause of the collision, because of her failure to observe the starboard hand rule.

Decree for the libellants, with an order of reference.